WILHELM P. KENNARD, Respondent, *v.* VELMA H. KENNARD, Appellant.

First Department, November 17, 1939.

*Harold M. Phillips* of counsel [*Herman Phillips*, attorney], for the appellant.

*Bertram L. Roberts*, for the respondent.

GLENNON, J. The plaintiff and defendant are husband and wife. They were married on or about the 20th day of July, 1936. Prior thereto, on the 18th day of May, 1936, plaintiff signed and executed an instrument which reads in part: " That I, Wilhelm P. Kennard, * * * in consideration of One Dollar ($1.00) * * * to me in hand paid * * * the receipt whereof is hereby acknowledged, have assigned, transferred and set over, and by these presents

do assign, transfer and set over, unto my wife Velma H. Kennard, * * * any and all income hereafter accruing and becoming payable to me, pursuant to a certain indenture of agreement, dated May 25, 1909, * * * but only for and during the period of seven years from the date hereof."

Defendant on the same day by another instrument, in letter form, addressed to plaintiff, said in part:

" I have procured from Mrs. W. G. Cherry a loan in the sum of approximately $1092, which I undertake to apply in reduction of your most pressing liabilities. You have executed this day, to be delivered to City Bank Farmers Trust Company, an assignment of your income to me for seven (7) years. It is understood that I am to receive and apply this income during that period, firstly, in the payment of taxes and mortgage interest affecting our place at Campbell Hall, Orange County, New York, secondly, in payment of necessary and reasonable living expenses, and thirdly, in liquidation of your outstanding liabilities, schedule of which, with the approximate respective amounts of same, is attached hereto. I am to use my best judgment and discretion in so applying this income, in order to pay off the said mortgage interest and taxes, carry on our household and effect complete payment of your liabilities as soon as can be practicably done.

" In the event that payment of these liabilities is completely made at any time before the expiration of the seven years, then I shall effect a revocation and cancellation of the assignment of income. Meanwhile, however, it is understood that you will take no measures to interfere with payment of the said income and the operation of said assignment, or incur any liabilities that might affect payment of the income to me. The said period is fixed at seven years, not as a definite arbitrary term, but as our estimate of the time which will be required for the reasonable application of your income to effect the purpose above stated."

It is quite apparent, in view of the dates, that the parties were not man and wife on the day the instruments were executed. However, it is safe to say, at that time and at least for a short period subsequent to the marriage, that peace and harmony reigned supreme. Later difficulties arose. Under date of February 1, 1938, plaintiff wrote the defendant a letter in which he demanded an accounting. Subsequently, this action was commenced. The complaint was served, and an answer was interposed.

Defendant set up as a first separate defense, in substance, that the plaintiff had abandoned her and that as a result thereof the maintenance of a " joint household became an impossibility and could no longer be maintained by reason of the acts of the plaintiff."

For a second defense she alleged that between September 26, 1936, and up to January 5, 1938, plaintiff refused and neglected to provide for her support, and as a consequence she was obliged to meet her obligations out of the funds payable to her " from the income of the trust assigned to defendant on May 18, 1936." For a third separate and distinct defense she alleged that plaintiff had treated her in a cruel and inhuman manner, that it became unsafe and improper for her to live and cohabit with him, and, therefore, a joint household could not be maintained.

For a fourth defense to the action she alleged, in effect, that while pursuant to the terms of the agreement entered into between the parties, plaintiff had promised he would take no measures to interfere with the payment of the income and the operation of the assignment, he did in fact interfere by attempting to revoke the assignment, and the defendant was put to an expense in the defense of an action which was instituted by the trustee, City Bank Farmers Trust Company, wherein it sought a declaratory judgment to have the claims of the plaintiff and defendant determined. It is then alleged that in that action it was held that the assignment was valid and the trustee was directed to pay over the moneys accruing from the trust to the defendant.

As a fifth defense she alleged that she assumed the obligation to liquidate plaintiff's outstanding liabilities; that the funds payable to defendant from the income would be insufficient to pay his obligations and that any payment directed to be made to plaintiff " will operate to defeat the rights of plaintiff's just creditors."

Under date of June 3, 1938, the defendant served a notice that she intended to amend her answer upon the trial in certain respects. However, it would appear from the record that no trial of this action took place before the court, and consequently, we are in the dark as to whether or not leave to serve an amended answer was granted.

An interlocutory judgment was entered upon the consent of the defendant wherein it was provided in effect that the account and the objections thereto be referred to a referee to hear and report to the court. Thus it follows that the referee was precluded by the terms of the interlocutory judgment from taking testimony and reporting to the court on all the issues which were raised by the defendant's answer. Defendant testified before the referee that she left the plaintiff on December 23, 1936, and took up a separate residence. The circumstances under which she parted from her husband do not appear from her testimony.

At or about the time that the present action was commenced, the plaintiff instituted another suit for a separation. All that can be gleaned from the record is that the complaint and counterclaim

were dismissed after a trial. Whether or not that adjudication was on the merits does not appear. If the court found there that the defendant was not at fault, of course, the plaintiff would be under an obligation to support her. The pleadings in that action do not appear in the present record, and consequently, we are not in a position to know what was determined.

While reference has been made to the action which the trustee instituted for a declaratory judgment, we cannot determine now whether or not defendant would be entitled to be reimbursed for the money she expended as counsel fees in her defense of the suit, since again there are insufficient facts upon which to base a determination.

It may well be that there was sufficient proof in the record to justify the entry of a decree removing the defendant for misconduct. However, that is a matter which the court may determine upon the trial.

Since a new trial must be had at Special Term, so that the matter pleaded by the defendant as affirmative defenses may be passed upon, additional proof should be adduced in connection with the so-called Cherry loan which is referred to in the final decree, in order to avoid further litigation.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

UNTERMYER, DORE and COHN, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.